Matter of Schulze v City of Newburgh Fire Dept. (2025 NY Slip Op 02101)

Matter of Schulze v City of Newburgh Fire Dept.

2025 NY Slip Op 02101

Decided on April 10, 2025

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 10, 2025

No. 32 

[*1]Adam Schulze, Respondent,
v
City of Newburgh Fire Department, Appellant. Workers' Compensation Board, Respondent.

Lars P. Mead, for appellant.
Dustin Brockner, for respondent Workers' Compensation Board.
Richard T. Cahill, Jr., for respondent Adam Schulze.

WILSON, Chief Judge

Pursuant to a complicated statutory scheme, paid firefighters outside New York City who become disabled at work may receive benefits from different sources: their local governmental employer, New York State, and the Workers' Compensation System. Adam Schulze is a retired paid firefighter who, when employed by the City of Newburgh, was disabled in the performance of duty. He received benefits from all three sources. This case concerns whether the City can compel the Workers' Compensation Board to pay Mr. Schulze's workers' compensation benefits to the City, as a way to allow it to recoup an overpayment it claims to have made to Mr. Schulze. Based on the clear language of the relevant statutes, the City cannot do so.
I.
Generally speaking, a disabled firefighter may fall into one of three categories: (1) the firefighter may remain on the municipality's or fire district's payroll (General Municipal Law § 207-a [1]), (2) the firefighter may retire, either by choice or through the action of the municipality or fire district, and receive accidental disability retirement (ADR) (Retirement and Social Security Law § 363), or (3) the firefighter may retire, either by choice or through the action of the municipality or fire district, and receive performance of duty (POD) retirement (Retirement and Social Security Law § 363-c). Which category a firefighter falls into depends on the severity and permanence of the firefighter's injury, as well as the manner in which the injury occurred. In each category, a firefighter may be eligible for benefits under General Municipal Law § 207-a and/or workers' compensation.
In some circumstances, the total of the separate benefits may be greater than the firefighter's salary had the firefighter not been injured. To prevent such double payments, the legislature has created specific mechanisms to allow either the state or local government to reduce benefits payments. Whether and which mechanism applies depends on the combination of benefits a firefighter is receiving. This case requires us to determine whether two of those mechanisms—Workers' Compensation Law §§ 25 (4) (a) and 30 (2)—are available here.
In 2001, Mr. Schulze began working as a firefighter for the City of Newburgh Fire Department. On April 30, 2012, Mr. Schulze suffered work-related injuries to his neck and back while putting out a fire. He had surgery on his cervical spine. But even after his surgery, Mr. Schulze was unable to lift anything over 15 pounds and experienced constant pain. His doctor told him he could never be a firefighter again. Mr. Schulze was classified as permanently partially disabled on February 23, 2015, when he was 39 years old.
After his injury, Mr. Schulze stopped working. The City continued to pay him his full salary, as was required by General Municipal Law § 207-a (1). From May 2012 to December 2015, Mr. Schulze also received workers' compensation awards. Because Mr. Schulze remained on the City's payroll drawing a full salary, the City received reimbursement from those awards for its General Municipal Law § 207-a (1) salary payments (Workers' Compensation Law § 30 [2]). In that way, the City's total payments to Mr. Schulze were effectively reduced, and Mr. Schulze did not receive more than his salary as a firefighter.
In April 2016, Mr. Schulze's application for POD retirement under Retirement and Social Security Law § 363-c was approved, entitling him to a 50% pension for life. Once Mr. Schulze was approved for POD retirement, he left the City's payroll; his last day on the payroll was April 30, 2016. From that point forward, the State paid his pension and, as required by General Municipal Law § 207-a (2), the City paid Mr. Schulze the difference between his POD pension and his salary. Mr. Schulze thus continued to receive an amount equal to his salary. Under General Municipal Law § 207-a (2), the City's payments continue until the disabled firefighter reaches mandatory retirement, at which point they cease, and the firefighter receives only the state-paid disability pension benefit.
In February 2015, when Mr. Schulze was classified as permanently partially disabled, a Workers' Compensation Law Judge (WCLJ) held that Mr. Schulze was eligible for up to 375 weeks of workers' compensation payments. The payments themselves were awarded in retroactive installments, several months at a time. For an installment to be awarded, either Mr. Schulze or the City had to request the award. Until December 2015, Mr. Schulze regularly requested payments. The last payment (before the payments at issue here) was awarded in December 2015, for the period from August 27, 2015, to December 24, 2015. From December 2015 to July 2019, neither Mr. Schulze nor the City requested another installment of workers' compensation.
In July 2019, Mr. Schulze requested a hearing to determine his entitlement to workers' compensation for two periods of time: (1) December 2015 to April 2016, which represents the period between Mr. Schulze's last workers' compensation payment and the date he left the City's payroll; and (2) April 2016 on. The City requested reimbursement from both awards for its prior payments under General Municipal Law § 207-a (1) (before Mr. Schulze's retirement) and General Municipal Law § 207-a (2) (after his retirement). In other words, the City conceded Mr. Schulze was entitled to workers' compensation payments, but sought to reduce the amount it paid to him by the amount he had already been paid under the General Municipal Law.
In December 2019, the WCLJ awarded Mr. Schulze payments for both periods of time in an amount of $504.41 per week. The WCLJ granted the City reimbursement from the payments for the period of December 2015 to April 2016 but denied the City reimbursement from the payments for April 2016 on.
The City appealed the denial of reimbursement for that later period, and the Workers' Compensation Board upheld the WCLJ's decision, relying on the Appellate Division's decision in Matter of Harzinski v Village of Endicott, 126 AD2d 56 (3d Dept 1987). The Appellate Division affirmed the Board's decision (213 AD3d 1046, 1048 [3d Dept 2023]). The Appellate Division rejected the City's argument that Harzinski applied only to payments made to firefighters receiving ADR (rather than POD) benefits, and applied Harzinski's conclusion that General Municipal Law § 207-a (2) payments are not "wages" under sections 25 (4) (a) and 30 (2) of the Workers' Compensation Law (id. at 1047-1048, citing Harzinski, 126 AD2d at 58). We granted the City leave to appeal.
II.
A.
Paid firefighters employed outside New York City who are disabled by an injury sustained on the job may be eligible for benefits under the following statutes:
• The Retirement and Social Security Law, which provides for either ADR or POD retirement benefits paid by the state police and firefighters' retirement system, not the firefighter's employer;
• The General Municipal Law, which provides for benefits paid by the firefighter's employer (a covered municipality or fire district); and/or
• The Workers' Compensation Law, which provides for awards paid by the employer (in the case of paid firefighters, the municipality or fire district) or the employer's insurer.
Such a firefighter may be in one of the following three situations. First, the firefighter may still be on the employer's payroll. Until and unless the firefighter retires, General Municipal Law § 207-a (1) requires the employer to pay the firefighter "the full amount of his or her regular salary or wages" until the firefighter's disability ends. The employer's General Municipal Law § 207-a (1) payments to the firefighter are "credited against" any workers' compensation benefits the firefighter is awarded (Workers' Compensation Law § 30 [2]). Put differently, while a firefighter is receiving General Municipal Law § 207-a (1) benefits, the Workers' Compensation Board will order that the employer receive "reimbursement" for its section 207-a (1) payments from a workers' compensation award for the same period. Second, a firefighter may retire and receive ADR benefits under Retirement and Social Security Law § 363 [FN1]. In that case, General Municipal Law § 207-a (2) requires the employer to pay the difference between the firefighter's ADR benefits and "the amount of his or her regular salary or wages" until the firefighter reaches mandatory retirement. If the firefighter receives workers' compensation, the firefighter's ADR benefits are reduced by the amount of the workers' compensation award (Retirement and Social Security Law §§ 363 [e] [3], 364 [a]). Third, a firefighter may receive POD retirement benefits under Retirement and Social Security Law § 363-c [FN2]. Like firefighters receiving ADR benefits, firefighters receiving POD retirement benefits are entitled to supplemental payments from the employer under General Municipal Law § 207-a (2). Unlike ADR benefits, however, POD retirement benefits are not reduced by a workers' compensation award (Retirement and Social Security Law § 363-c [i]). Instead, when a firefighter receives POD retirement benefits, the employer is entitled to reduce its General Municipal Law § 207-a (2) payments by the amount of the workers' compensation award (General Municipal Law § 207-a [4-a]). The statutory scheme thus creates a difference: in the case of firefighters receiving ADR benefits, workers' compensation awards reduce the State's obligation; for firefighters receiving POD benefits, workers' compensation awards reduce the employer's obligation.[FN3]
Mr. Schulze is in the third situation. He has received POD retirement benefits, supplemental payments under General Municipal Law § 207-a (2), and workers' compensation payments. Instead of following the statutory scheme outlined above, which requires the City to reduce its General Municipal Law § 207-a (2) payments "by the amount of the benefits that are finally determined payable under the workers' compensation law" (General Municipal Law § 207-a [4-a]), the City seeks an order from the Workers' Compensation Board directing that the City receive the [*2]workers' compensation payments due to Mr. Schulze as reimbursement for the payments the City made to Mr. Schulze under General Municipal Law § 207-a (2). The City is not entitled to that relief, as the WCLJ, Workers' Compensation Board, and Appellate Division held.
B.
The City argues that two provisions of the Workers' Compensation Law entitle it to reimbursement from Mr. Schulze's workers' compensation award: sections 30 (2) and 25 (4) (a). The City's arguments are unavailing: it is clear from the text of those provisions that neither entitles an employer to reimbursement for General Municipal Law § 207-a (2) payments.[FN4]
Workers' Compensation Law § 30 (2) does not encompass payments under General Municipal Law § 207-a (2). Section 30 (2) provides, as relevant here:
"No benefits, savings or insurance of the injured employee, independent of the provisions of this chapter, shall be considered in determining the compensation or benefits to be paid under this chapter, except that . . . (2) in case of an award of compensation to a paid firefighter of a . . . fire department of a city of less than one million population, . . . any salary or wages paid to . . . such paid firefighter under and pursuant to [General Municipal Law 207-a] shall be credited against any award of compensation to such paid firefighter under this chapter."
Payments under General Municipal Law § 207-a (2) are not "salary or wages." The Workers' Compensation Law defines "wages" as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident" (Workers' Compensation Law § 2 [9]). General Municipal Law § 207-a (2) payments do not meet that definition. They are pension supplements that bridge the gap between retirement benefits and the wages a firefighter would have been entitled to, had the firefighter not retired (see Matter of Borelli v City of Yonkers, 39 NY3d 138, 142 [2022]).
The legislative history of Workers' Compensation Law § 30 (2) supports the conclusion that the provision applies to payments under General Municipal Law § 207-a (1), but not payments under General Municipal Law § 207-a (2). Section 30 (2) was created in 1951, 13 years after the enactment of General Municipal Law § 207-a (see L 1951, ch 812, § 2). In 1951, subdivision two of section 207-a did not exist—section 207-a simply required covered municipalities and fire districts to pay the full salary and wages of disabled firefighters, with no provision for retirement (see id. § 1; see also L 1977, ch 965, § 1). Workers' Compensation Law § 30 (2) was intended to "protect municipalities and fire districts against unwarranted payments of full salary," under subdivision 207-a (1), "plus workmen's compensation benefits" (Mem from Association of Fire Districts to Governor Dewey, Bill Jacket, L 1951, ch 812 at 7; see also Mem from State Comptroller J. Raymond McGovern to Governor Dewey, id., at 12-13). Municipalities making payments under General Municipal Law § 207-a (2) are not making payments of "salary or wages," and may not receive reimbursement through Workers' Compensation Law § 30 (2).
The City's arguments under Workers' Compensation Law § 25 (4) (a) are equally unavailing. Section 25 (4) (a) provides:
"If the employer has made advance payments of compensation, or has made payments to an employee in like manner as wages during any period of disability, he shall be entitled to be reimbursed out of an unpaid instalment or instalments of compensation due, provided his claim for reimbursement is filed before award of compensation is made, or if insured, by the insurance carrier at the direction of the board . . . ."
Contrary to the City's argument, General Municipal Law § 207-a (2) payments are not "payments to an employee in like manner as wages" under Workers' Compensation Law § 25 (4) (a). Subdivision 207-a (2) payments are calculated differently from wages and are properly understood as pension supplements. Furthermore, General Municipal Law § 207-a (2) payments are not made to employees, as Workers' Compensation Law § 25 (4) (a) requires. Whereas firefighters receiving General Municipal Law § 207-a (1) payments remain on the employer's payroll, firefighters receiving General Municipal Law § 207-a (2) payments are retired.
In fact, General Municipal Law § 207-a (2) was specifically created to shift responsibility for supporting disabled firefighters from local governments to the State by moving firefighters off municipal payrolls and onto retirement benefits (see Borelli, 39 NY3d at 143). Before 1977, when General Municipal Law § 207-a (2) was created, disabled firefighters had no reason to retire. If a firefighter remained disabled and stayed on the payroll, the employer had to keep paying the firefighter's full salary (General Municipal Law 207-a [1]). Firefighters retiring on ADR—the only relevant retirement system benefit available at the time—received a pension of 75% of their final average salary (Sponsor's Mem in Support, Bill Jacket, L 1984, ch 661 at 9). The point of General Municipal Law § 207-a (2) was to "permit the retirement of a fireman eligible for disability retirement benefits" (Governor's Approval Mem at 1, Bill Jacket, L 1977, ch 965). It is thus core to subdivision 207-a (2) that the firefighters who receive its benefits are no longer employees receiving a salary.
The legislative history of Workers' Compensation Law § 25 (4) (a) supports the conclusion that it does not apply to General Municipal Law § 207-a (2) payments. The precursor to section 25 (4) (a)—which included the phrase "payments to an employee in like manner as wages"—was added to the Workers' Compensation Law in 1930 (see L 1930, ch 316, § 3). The provision was intended to ensure that employers who paid disabled firefighters wages while a workers' compensation award was pending would not be penalized. Supporters of the bill explained:
"The amendment . . . [provides] that the employer who has made advance payments to an employee as wages during any period of disability shall receive the same credit as though it were a compensation payment and be entitled to reimbursement from his insurance carrier. . . . This procedure will not penalize or prevent certain employers pursuing a policy of paying employees' wages in addition to compensation and in such cases will not permit the insurance carrier to be in a more favorable position because of such employers' personnel policy"
(Supporting Mem, Bill Jacket, L 1930, ch 316 at 4). Payments under General Municipal Law § 207-a (2) are thus not like the wage payments contemplated under Workers' Compensation Law § 25 (4) (a).
C.
Underlying the City's position is the argument that the remedy available under the statutory scheme is insufficient. The legislature did not ignore the potential for duplicative benefits for firefighters on POD retirement. The provision that ensures that firefighters like Mr. Schulze do not receive double payments is General Municipal Law § 207-a (4-a). That subdivision provides:
"Any benefit payable pursuant to [General Municipal Law § 207-a (2)] to a person who is granted retirement for disability incurred in performance of duty pursuant to [Retirement and Social Security Law § 363-c] shall be reduced by the amount of the benefits that are finally determined payable under the workers' compensation law by reason of accidental disability."
In the City's view, General Municipal Law § 207-a (4-a) is an inadequate remedy where, as here, General Municipal Law § 207-a (2) payments are made before a final workers' compensation award. For the period from April 2016 to October 2019, the City made supplemental payments to Mr. Schulze pursuant to General Municipal Law § 207-a (2). Subsequently, in October 2019, Mr. Schulze was retroactively awarded workers' compensation payments for that period. The delay resulted in Mr. Schulze receiving approximately $106,000 more than he should have received.
The City argues that it would be unfair to limit employers to the remedy set out in General Municipal Law § 207-a (4-a) when a firefighter receives a retroactive workers' compensation award for a period during which the employer has already made General Municipal Law § 207-a (2) payments. When that happens, the employer cannot go back in time to reduce its subdivision 207-a (2) payments in the first instance. Whether General Municipal Law [*3]§ 207-a (4-a) provides an employer with another way to recoup its prior payments, such as by reducing future General Municipal Law § 207-a (2) payments to compensate for past double payments or bringing a plenary action against the firefighter to recover the overpayment, is not before us.[FN5]
In this case, the City could have avoided the overpayment by asking the WCLJ to award workers' compensation benefits beginning in April 2016, when Mr. Schulze retired (see, e.g., Matter of Georges v Zotos Intl. Inc., 198 AD3d 1047, 1047 [3d Dept 2021] [referencing an employer's request for further action], Matter of McQueer v Adirondack Tank Servs., Inc., 142 AD3d 743, 758 [3d Dept 2016] [same], Matter of Tricarico v Town of Islip, 136 AD3d 1127, 1129 [3d Dept 2016] [same]). If the City had done so, it would have been entitled to reduce its General Municipal Law § 207-a (2) payments by the amount of workers' compensation finally determined. Instead, the City allowed years to pass without an award of workers' compensation, thereby running the risk that Mr. Schulze would later receive a retroactive award covering that period of time [FN6]. Having failed to avail itself of the proper remedy, the City now seeks to avail itself of a statutorily unavailable remedy.
III.
Neither Workers' Compensation Law § 25 (4) (a) nor Workers' Compensation Law § 30 (2) allows reimbursement from workers' compensation awards for payments made under General Municipal Law § 207-a (2). The provision that prevents Mr. Schulze and other firefighters like him from receiving duplicative benefits is General Municipal Law § 207-a (4-a). The City of Newburgh Fire Department is therefore not entitled to reimbursement directly from Mr. Schulze's workers' compensation award for its prior payments to him under General Municipal Law § 207-a (2). The order of the Appellate Division should be affirmed, with costs.
Order affirmed, with costs. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro, Troutman and Halligan concur.
Decided April 10, 2025

Footnotes

Footnote 1: ADR benefits include a pension of 75% of the firefighter's final average salary (Retirement and Social Security Law § 363 [e] [3]). 

Footnote 2: POD retirement benefits include a pension of 50% of the firefighter's final average salary (Retirement and Social Security Law § 363-c [f]).
Footnote 3: The statutory system represents cost-shifting between state and local governments. That cost-shifting can most clearly be seen in the legislative history of General Municipal Law § 207-a. Before 1938, each municipality in New York had its own system for compensating disabled firefighters. Although some municipalities gave disabled firefighters " 'comprehensive and generous' pensions," others did not (Matter of Borelli v City of Yonkers, 39 NY3d 138, 142-143 [2022]). To "tak[e] care of . . . firefighters," the legislature enacted what is now General Municipal Law § 207-a (1), which requires covered municipalities and fire districts to pay disabled firefighters "the full amount of his or her regular salary or wages" until the firefighter's disability ends (General Municipal Law § 207-a [1]). "By the 1970s, many New York municipalities complained that the statutory requirements were excessively costly and undesirable" (Borelli, 39 NY3d at 143). In 1977, the legislature responded to municipalities' concerns by enacting General Municipal Law § 207-a (2), which "shifted much of the burden onto state pension systems and away from municipal payrolls" (id.).

Footnote 4: Our decision is consistent with the Appellate Division's longstanding precedent. In Harzinski, the Appellate Division held that employers were not entitled to reimbursement from workers' compensation awards for General Municipal Law § 207-a (2) payments to firefighters receiving ADR (126 AD2d at 57). The Appellate Division reasoned that General Municipal Law § 207-a (2) payments "do not constitute wages within the meaning of Workers' Compensation Law § 25 (4) (a) or § 30 (2)" (id. at 58).
Footnote 5: In this case, we are asked to review a decision of the Workers' Compensation Board, which does not have the power to administer benefits under the General Municipal Law (Workers' Compensation Law § 142).

Footnote 6: At oral argument, the City suggested that a short "gap" between a disabled firefighter's retirement and a workers' compensation award may, in some cases, be inevitable. But General Municipal Law § 207-a (4-a) is the remedy the legislature has created. It is for the legislature to determine whether it is adequate.